# United States District Court
District of Idaho, Northern Division

| | |
|---|---|
| **Eric Ramon Buchanan,**<br>　　　　　　Petitioner, | ] |
| | ] |
| v. | ] |
| | ] |
| **STATE OF IDAHO, et al.,**<br>　　　　　　Respondents. | ] |
| | ] |

Case No. 2:25-cv-00368

U.S. COURTS

AUG 0 5 2025

Rcvd _____ Filed _____ Time 1:40PM

STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## "Petitioner's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e), or in the Alternative, Motion for Relief from Judgment Under Rule 60(b)"

Comes now Petitioner, Eric Ramon Buchanan, sui juris, and respectfully moves this Court pursuant to **Federal Rule of Civil Procedure 59(e)** to alter or amend its judgment dismissing this matter for lack of subject-matter jurisdiction.

## Legal Standard

A motion to alter or amend judgment under **Fed. R. Civ. P. 59(e)** is appropriate in three circumstances **(1)**To correct manifest errors of law or fact;**(2)**To consider newly discovered or previously unavailable evidence; or **(3)** To prevent manifest injustice.  See *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

The Ninth Circuit has stressed that Rule 59(e) is not a "second bite at the apple," but is warranted where the court misapplied controlling precedent, misapprehended the record, or failed to consider material facts. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Here, the judgment dismissing removal in 368 rests on precisely the kind of errors Rule 59(e) was designed to correct:

- **Manifest error of law**: The Court treated this petition as identical to 00113, even though § 1455(b)(1) timeliness and the absence of racial civil rights claims (the basis for AKB's dismissal) are not present here. This misapplies *Johnson v. Mississippi*, 421 U.S. 213 (1975), which recognizes that new factual developments justify a successive removal.

- **Overlooked controlling precedent**: The Court relied on *Peacock* **and** *Younger* without acknowledging the well-established exceptions for bad faith, harassment, and systemic denial of federal rights (*Rachel*, *Younger* exceptions).
- **Failure to consider material facts**: The judgment overlooked the new constitutional violations occurring after 00113, racial slurs, selective prosecution of Petitioner while shielding Kimber, void summonses, and suppression of Brady material. None of these were presented or litigated in the earlier case.
- **Manifest injustice**: Denying federal jurisdiction when state courts are actively blocking federal rights leaves Petitioner with no remedy and subjects him to unconstitutional sentencing. The Supreme Court has repeatedly held that habeas corpus is a "writ of right" in precisely these situations. *Ex parte Bollman*, **8 U.S. (4 Cranch) 75 (1807).**

### WHY THE DISMISSAL IN 00113 DOES NOT CONTROL 00368

When the federal court dismissed Petitioner Buchanan's prior removal petition in **Case No. 2:25-cv-00113-AKB**, it relied on two narrow grounds: timeliness and lack of a specific statutory racial civil rights claim. The court found the Notice of Removal untimely under **28 U.S.C. § 1455(b)(1)** because it was filed more than thirty days after arraignment, and it criticized the petition for presenting only "general due process" concerns rather than a concrete denial of equal civil rights under **§ 1443(1).** The court then invoked *City of Greenwood v. Peacock*, **384 U.S. 808 (1966)**, to conclude that general constitutional complaints about state criminal procedure are insufficient for removal.

That reasoning, while applicable to the procedural posture of the 00113 filing, has no bearing on the present case, which is based on different facts, different timing, and different violations of law. More critically, this petition does not rest on bare allegations but on factual predicates established in the state court record itself. The denial of defense motions without hearings, the setting of Brady litigation on the day of sentencing, the docket entries showing refusal to file pro se pleadings, and the orders in limine excluding defense witnesses are all matters of record.

These are not speculative claims, but concrete judicial acts already memorialized in Idaho's proceedings, and they supply standing grounded in indisputable evidence. Unlike the 00113 petition, which the Court characterized as "general due process allegations," the instant removal demonstrates constitutional violations supported by the official record and factual predicates established in the state court record itself. The constitutional violations at issue are not

speculative complaints about fairness but demonstrable occurrences reflected in Idaho's own dockets, orders, and filings. which this Court may judicially notice and cannot deny.

## STATE RECORD-BASED VIOLATIONS DEMONSTRATING STANDING

### 1.    DENIAL OF DEFENSE MOTIONS WITHOUT HEARINGS

Multiple motions filed on Petitioner Buchanan's behalf, including motions for bond reinstatement and motions to dismiss for Brady violations, were summarily denied without hearing or meaningful review. The docket reflects outright refusal by the court to allow argument or evidence, showing systemic denial of process.

This is not an allegation, it is borne out by procedural history itself. In **Armstrong v. Manzo, 380 U.S. 545, 552 (1965)**, the Supreme Court made clear that due process is not satisfied by the mere existence of procedural forms; it requires that a litigant be afforded _"an opportunity to be heard at a meaningful time and in a meaningful manner."_ Similarly, in **Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982),** the Court held that arbitrary denial of a hearing altogether violates the essence of procedural due process. These principles strike at the heart of the misconduct in Petitioner Buchanan's case. When Petitioner moved for bond reinstatement and for dismissal based on Brady violations, along with the petition for habeas corpus, the Idaho courts denied these motions without affording him a hearing. Denial without consideration is not a neutral exercise of judicial discretion; it is the functional equivalent of stripping him of his right to be heard.

The consequences here are particularly severe because the motions in question were not collateral or minor matters. A motion to dismiss based on Brady violations goes to the integrity of the prosecution itself, and a bond reinstatement motion concerns Petitioner's liberty interest pending trial. To deny those without any hearing is to deprive him of the chance to present evidence, cross-examine state assertions, or otherwise meaningfully advocate for his rights. That falls squarely within the constitutional violations condemned in Armstrong and Logan. It demonstrates that Idaho courts are not providing Petitioner the constitutionally required forum to vindicate his rights, which in turn satisfies the criteria for federal intervention under § 1443(1).

### 2.    BRADY MOTION SET ON DAY OF SENTENCING

The defense filed a motion to compel Brady material, which the court did not schedule for timely review. Instead, it was set on the same date as sentencing, rendering substantive

adjudication impossible. This demonstrates deliberate suppression of exculpatory rights, corroborated by the scheduling order itself.

The Supreme Court in *Brady v. Maryland*, **373 U.S. 83, 87 (1963),** held that the suppression of material exculpatory evidence by the prosecution violates due process, regardless of whether the prosecution acted in good faith or bad faith. The essential point of *Brady* is that a fair trial cannot exist where the defense is deprived of evidence that could alter the outcome of guilt or punishment. That duty extends not merely to outright concealment but to any state action that prevents the defense from timely obtaining and using such material. In *United States v. Bagley*, **473 U.S. 667, 682 (1985),** the Court clarified that disclosure must occur at such a time as to allow the defense to make "*effective use*" of the evidence. Late disclosure, or procedural gamesmanship that renders evidence unusable, operates as suppression for constitutional purposes.

Petitioner's case presents exactly this violation. The Idaho court set his Brady motion for the same day as sentencing, after trial was concluded, after the jury rendered its verdict, and at a point when any exculpatory material could no longer alter the outcome of conviction. That scheduling decision is not a neutral administrative act but a constructive suppression of evidence under *Brady* **and** *Bagley*. By depriving Petitioner of a meaningful opportunity to litigate the Brady motion prior to conviction, the court guaranteed he could not benefit from exculpatory material, no matter how compelling. This is constitutional error of the highest order: a deliberate structure that ensures Brady rights exist on paper but never in practice. Such conduct demonstrates the inadequacy of Idaho courts to enforce federally secured rights and underscores why federal jurisdiction under **28 U.S.C. § 1443(1)** is both proper and necessary.

3.    **REFUSAL TO ACCEPT PRO SE FILINGS**

Court records show that the clerk's office rejected filings tendered by Petitioner personally, insisting they could only be accepted through standby counsel. When standby counsel refused to file defense materials, the effect was a total procedural bar to Petitioner accessing the court. The record reflects the refusal to docket filings directly, creating an undeniable paper trail of denial of access.

In **Faretta v. California, 422 U.S. 806, 819 (1975),** the Supreme Court recognized that the right of self-representation is a cornerstone of the Sixth Amendment, holding that a defendant must be permitted to conduct his own defense when he voluntarily and intelligently elects to do

so. This right is not symbolic, it guarantees that the defendant's own voice, strategy, and filings reach the court. In **McKaskle v. Wiggins, 465 U.S. 168, 177 (1984),** the Court further clarified that while standby counsel may assist, counsel cannot "override" or "nullify" a defendant's choices, nor may the court use standby counsel as a gatekeeper to silence or exclude the defendant's filings. The essential principle is that the defendant, not the standby attorney, retains ultimate control of the defense.

Petitioners' experience in Idaho courts is the antithesis of these constitutional guarantees. After asserting his sui juris right to self-representation, every motion he filed was summarily denied without consideration. When he attempted to pursue post-trial relief, the clerk's office refused to accept his filings, insisting that only standby counsel could submit them. Yet his standby counsel, by email, expressly refused to file documents on Petitioner's behalf(Exhibit **A**) ). This created a closed loop where Petitioner's Sixth Amendment right to self-representation was nullified in practice. Under **Faretta and McKaskle,** such a structure is unconstitutional: it reduces the right to a mere illusion by silencing the defendant while insulating the court from accountability. This record demonstrates that Petitioner's right to self-representation was not merely disfavored but extinguished by state procedures, further proving that Idaho's courts are structurally incapable of enforcing federal rights and necessitating removal under **28 U.S.C. § 1443(1).**

4.     **ORDERS IN LIMINE EXCLUDING DEFENSE WITNESSES**

Judge Berecz entered orders in limine barring Petitioner from calling material witnesses, including Prosecutor Molly Nivison. These orders are part of the record, and they demonstrate an affirmative deprivation of compulsory process under the **Sixth Amendment**.

In **Washington v. Texas, 388 U.S. 14, 19 (1967),** the Supreme Court held that the Sixth Amendment's Compulsory Process Clause guarantees every defendant the right to call witnesses in his favor, and that arbitrary rules excluding such testimony strike at the very heart of a fair trial. Similarly, in **Chambers v. Mississippi, 410 U.S. 284, 302 (1973),** the Court reaffirmed that the right to present reliable, material witnesses is essential to due process, warning that the exclusion of such testimony can transform a trial into a mere formality rather than a search for truth. Together, these decisions establish that the ability to present a defense is not a courtesy extended by the state but a fundamental constitutional command binding on all courts.

Petitioner Buchanan was denied this core right when Judge Berecz entered sweeping in

limine orders barring him from calling critical witnesses, including Prosecutor Molly Nivison, the very official directing the prosecution's strategy and conduct. By excluding Nivison's testimony categorically, the court foreclosed Petitioner's ability to expose prosecutorial misconduct and the manufactured nature of the conspiracy charge. This was not a discretionary evidentiary ruling but an unconstitutional deprivation of compulsory process. Under Washington and Chambers, such exclusion is more than error; it is structural denial of a fair trial. Idaho's deliberate suppression of defense testimony demonstrates that its courts are not merely hostile but structurally incapable of safeguarding federal rights. Federal jurisdiction under **28 U.S.C. § 1443(1)** is therefore not optional but mandatory, because Petitioner cannot enforce his rights in the very forum that is constitutionally bound to protect them.

5.    **ARREST AND IMMUNIZATION OF ALLISON KIMBER**

State records confirm that Allison Kimber was arrested mere days before trial and immediately immunized. She, not Petitioner, was the individual who sold narcotics to officers. Yet the record shows she was charged only with minor offenses and then shielded to coerce testimony. This sequence of charging documents and immunity orders is undeniable evidence of manufactured conspiracy.

In **Mooney v. Holohan, 294 U.S. 103, 112 (1935),** the Supreme Court established that the Due Process Clause is violated when a conviction is obtained through the knowing use of perjured testimony or fabricated evidence. The Court emphasized that justice cannot tolerate "deliberate deception of court and jury by the presentation of testimony known to be perjured." Likewise, in **Napue v. Illinois, 360 U.S. 264, 269 (1959),** the Court reaffirmed that the State may not present testimony it knows is false, nor suppress facts that would reveal the falsity. The government's duty is not simply to prosecute, but to ensure that convictions rest on truth rather than manufactured falsehoods.

Petitioner Buchanan's case embodies the very misconduct Mooney and Napue forbid. Prosecutor Molly Nivison directed the arrest of Allison Kimber just six days before trial, not to prosecute her but to immunize her and secure her testimony against Petitioner. The record is undisputed that Kimber, not Petitioner, sold narcotics to officers. Yet the State shielded Kimber with minor charges of "frequenting" and "paraphernalia," then granted her immunity to fabricate a conspiracy narrative implicating Petitioner. By relying on Kimber's coerced and immunized testimony, while suppressing her role as the actual seller, the State presented the jury with a

distorted picture that it knew was false. This is not zealous advocacy; it is the deliberate construction of false testimony and suppression of truth. Under Mooney and Napue, such conduct violates due process and renders the conviction constitutionally infirm.

The application here is straightforward: when a prosecutor knowingly manufactures testimony to convict a defendant, the resulting conviction is void under federal law. Idaho's courts not only permitted but facilitated this misconduct, proving once more that Petitioner's rights cannot be enforced in that forum. Federal jurisdiction under 28 U.S.C. § 1443(1) is the only mechanism capable of vindicating these federally protected rights and halting the ongoing constitutional injury.

## 6.    RACIAL ANIMUS

The principle that racial discrimination in the enforcement of laws violates the Equal Protection Clause has been firmly embedded in constitutional jurisprudence **since Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886).** There, the Supreme Court held that even facially neutral laws are unconstitutional if applied in a discriminatory fashion against a disfavored racial group. Nearly a century later, **Batson v. Kentucky, 476 U.S. 79, 86 (1986),** reaffirmed that racial bias within the prosecutorial process undermines not only the fairness of the proceeding but the legitimacy of the justice system itself. More recently, in **United States v. Armstrong, 517 U.S. 456, 465 (1996),** the Court made explicit that selective prosecution claims based on race are not only cognizable but strike at the heart of equal protection, demanding judicial scrutiny when evidence shows a pattern of discriminatory enforcement.

Petitioner Buchanan's prosecution is a textbook example of the selective enforcement and racial bias condemned in these precedents. The record shows that during the investigation, officers openly used the racial slur "renigg," acknowledged its offensiveness, and yet faced no correction or discipline from their peers. This overt racial animus colored the entire investigation. At the same time, the State's treatment of the two participants underscores selective prosecution: Allison Kimber, a white female, directly sold narcotics to the officers yet was shielded from delivery charges, arrested only on minor counts of "frequenting" and "paraphernalia," and then immunized to testify against Petitioner. By contrast, Petitioner, a Black man, who was not the seller, was charged with delivery, conspiracy, and aiding and abetting, charges carrying a potential 25-year sentence.

This disparity is not coincidental; it is precisely the selective prosecution **Yick Wo, Batson,**

and **Armstrong** warn against. The State deliberately punished Petitioner more severely, while protecting Kimber, in order to preserve a manufactured narrative and secure a conviction tainted by racial bias. Such conduct demonstrates that Petitioner cannot obtain equal protection in Idaho's courts. To allow state proceedings to continue in the face of this record would be to ratify racial discrimination and violate the Equal Protection Clause itself. Federal jurisdiction under **28 U.S.C. § 1443(1)** is therefore not only proper but necessary to ensure Petitioner's civil rights are enforceable in a forum uncorrupted by bias.

7.    **FEDERAL JURISDICTION IN FACE OF STATE DENIALS**

In **Georgia v. Rachel, 384 U.S. 780, 804 (1966)**, the Supreme Court carved out a critical safeguard: removal under **28 U.S.C. § 1443(1)** is proper where state courts "cannot or will not enforce" federal civil rights. The Court recognized that when the state judicial process itself is the instrument of discrimination, the federal courts must provide the remedy, even if that means displacing state jurisdiction altogether. In **Johnson v. Mississippi, 421 U.S. 213, 219 (1975),** the Court went further, holding that successive removal petitions are proper whenever "new events" create new grounds for removal. In other words, a prior dismissal does not foreclose later removal if circumstances have changed or additional violations have occurred. Finally, **in Ex parte Virginia, 100 U.S. 339, 346 (1879)**, the Court declared unequivocally that judicial officers themselves are not immune when their acts, under color of law, deny equal protection. Judges cannot shield themselves behind robes when they become participants in constitutional violations.

These controlling precedents speak directly to Petitioner Buchanan's case. Unlike the prior 00113 removal, the present petition rests on a record now showing racial animus by officers, manufactured conspiracy by the prosecution, suppression of Brady evidence, categorical exclusion of defense witnesses, and denial of self-representation. These are not hypothetical risks but established facts in the state court record. Under Rachel, Idaho courts have demonstrated they *"will not enforce"* Petitioner's federal rights, they have denied hearings, refused filings, and scheduled Brady litigation on sentencing day, all while permitting racially biased officers to frame the case. Under Johnson, these new violations, arising after the prior petition, supply fresh grounds for removal. The 30-day clock under **§ 1455(b)(1)** cannot bar removal where new misconduct creates new federal questions.

Judge Berecz's own role underscores why **Ex parte Virginia** remains binding law. By

Petitioner's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e), or in the Alternative, Motion for Relief from Judgment Under Rule 60(b)"Page

entering orders in limine that barred Petitioner from calling Prosecutor Nivison, approving amended charges by stamp, and permitting proceedings that concealed exculpatory evidence, Judge Berecz acted not as a neutral arbiter but as a participant in the deprivation of rights. Judicial immunity does not extend to such unconstitutional conduct. **Ex parte Virginia** forecloses any attempt to dismiss these acts as "*judicial discretion*." When a judge colludes in the suppression of rights, he is as accountable as the prosecutor or officer who directly executes the violation.

The combined force of these precedents makes the argument unmistakable: Petitioner's removal is not procedurally barred, nor is it duplicative of prior filings. It is mandated by federal law because Idaho's courts cannot or will not protect his rights, new violations create new grounds, and even judicial officers are accountable when they become conspirators in racial discrimination and denial of due process. To deny reconsideration, would be to ignore the precise conditions that § **1443(1)** and these Supreme Court authorities were designed to address.

Unlike the petition in 00113, which the Court dismissed for presenting "general due process" allegations, the present case demonstrates constitutional violations substantiated by official state records. These materials are proper subjects of judicial notice under **Fed. R. Evid. 201**, and they establish standing and federal question jurisdiction beyond doubt. By ignoring them, the Court risks committing manifest error and perpetuating manifest injustice, precisely what Rule 59(e) exists to correct.

## A. Timeliness

The 00113-dismissal hinged on § **1455(b)(1)**'s 30-day clock from arraignment. But the instant removal petition (368) arises from a wholly different sequence of events:

- The State revived a previously dismissed delivery charge months after 00113,
- Prosecutor Nivison directed the arrest and immediate immunity of Allison Kimber just six days before trial in 2025,
- Judge Berecz barred defense witnesses and Brady material in rulings that occurred long after the 00113 petition.

Under **§ 1455(b)(1)**, removal is timely when filed "*at any time before trial*," or where "*good cause*" is shown for a later filing. Courts recognize that new violations restart the removal clock. **In *Miller v. Louisiana*, 2007 WL 1461031 (E.D. La. 2007)**, the court held that later developments can provide a new basis for removal because **§ 1455(b)(1)'s** 30-day period is not absolute when new grounds arise. Here, the violations in 2024–2025, manufactured conspiracy, racially biased enforcement, suppression of defense rights, did not even exist at the time of 00113. Thus, the timeliness bar in AKB's order is inapplicable.

**CLERK'S ADMINISTRATIVE ERROR IMPROPERLY JOINED
REMOVAL AND CIVIL RIGHTS CLAIMS**

Moreover, to the extent the Court construed this petition as a § 1983 damages action, that conclusion rests on an administrative error rather than the intent of the filer. Section 1443 removal petitions do not adjudicate damages claims; they exist solely to transfer jurisdiction where state courts cannot or will not enforce federal rights. When Mr. Buchanan filed his removal petition, he simultaneously sought to initiate a civil rights complaint under **42 U.S.C. § 1983**. The Clerk of Court, however, improperly joined these distinct filings, charging the $405 civil complaint fee but placing the claims under the removal docket (368). This contrasts sharply with the treatment of the contemporaneously filed habeas action, which the Clerk properly docketed separately as Case No. 369 with a $15 in relation to the $405 dollar civil rights claim.

Thus, while habeas was set on its own docket, the civil rights claim was procedurally merged with the removal, creating confusion that Petitioner neither intended nor authorized. Any procedural irregularity here lies with the Clerk's office, not with Petitioner. It would therefore be manifestly unjust to extinguish both the removal and the $405 civil filing fee on the basis of a clerical misjoinder. The appropriate remedy is twofold: **(1)** reinstate the removal petition under 368 as a pure § 1443 action, supported by record-based federal questions; and **(2)** apply the $405 fee already paid toward a new § 1983 action against Prosecutor Nivison and Judge Berecz, whose conduct falls outside the scope of immunity when they manufactured a conspiracy and colluded to suppress exculpatory evidence.

This remedy is consistent with established authority permitting courts to recharacterize pleadings to protect litigants' rights. **Castro v. United States, 540 U.S. 375, 381–82 (2003)**. It also prevents the inequitable result of Petitioner losing both his removal right and his paid filing fee due to an error in docketing. The Clerk's misfiling cannot strip Petitioner of statutory

protections. The Court should correct this administrative error by restoring 368 as a removal petition and directing the Clerk to open a separate civil docket, applying the $405 fee to the § 1983 claim against Nivison and Berecz as provided(Exhibit B).

Thus, the Court's reliance on cases dismissing petitions for procedural defects was misplaced. A procedural error does not bar removal where the substance shows ongoing racial animus and systemic deprivation of federal rights. To hold otherwise would contradict **Rachel and Johnson** and would reduce § 1443 to a hollow promise available only to those whose state courts were already willing to enforce federal rights, the precise opposite of Congress's intent.

In dismissing the petition, the Court cited cases such as **California v. Abdul-Malak, Georgia v. Clark, South Carolina v. Poinsettia, Brinson v. McKeeman, and Scott v. Weinberg** to conclude that the alleged violations were either procedurally defective or too general to sustain removal under **28 U.S.C. § 1443**. But these cases do not control here, because they involved petitioners advancing only broad due process grievances without record-based proof of racial or structural denial of rights. The present petition is materially different as its base is record of the court and factual, not allegations

**In Brinson v. McKeeman, 992 F. Supp. 897 (W.D. Tex. 1997)**, the court held that a removal petition raising only generalized complaints about criminal procedure did not fall within **§ 1443(1)**. Similarly, in **Scott v. Weinberg, 632 F.2d 183 (1st Cir. 1980),** the court rejected removal because the petitioner alleged only ordinary constitutional defenses that could be raised in state court. These authorities stand for the unremarkable proposition that § 1443 is not a free-standing vehicle to relitigate every state prosecution.

However, The Supreme Court has made clear that removal cannot be barred simply because of procedural defects if the underlying petition demonstrates that state courts *"cannot or will not enforce"* federal rights **Georgia v. Rachel, 384 U.S. 780, 804 (1966).** Likewise, in **Johnson v. Mississippi, 421 U.S. 213, 219 (1975),** the Court held that successive removals are proper when "new events" establish new grounds. Thus, even where a prior petition was denied, or where technical procedure was questioned, new constitutional violations compel federal courts to hear the case

Unlike Abdul-Malak, Brinson, and Scott, the present petition does not rest on vague or general claims. It documents specific violations supported by the state court record: **(1)** racial animus by officers, including use of the slur "renigg"; **(2)** selective prosecution shielding the actual white

drug seller while targeting Mr. Buchanan, a Black defendant, for conspiracy; **(3)** a Brady motion scheduled for the day of sentencing, foreclosing meaningful review; **(4)** categorical exclusion of defense witnesses under in limine orders; and **(5)** denial of self-representation through clerk refusals to file pro se motions. These facts place the case squarely within **Georgia v. Rachel, 384 U.S. 780, 804 (1966),** where the Supreme Court held removal proper when state courts cannot or will not enforce federal rights, and **Johnson v. Mississippi, 421 U.S. 213, 219 (1975)**, which permits successive removals when new events establish new grounds.

### FEE PRESERVATION AND SEVERANCE OF CIVIL RIGHTS CLAIMS

The Clerk's treatment of the filings demonstrates that the office itself understood there were multiple distinct actions initiated by Petitioner, removal, a civil rights complaint, and habeas corpus. Removal under **28 U.S.C. §§ 1443** and **1455** requires no fee. A civil rights complaint under **42 U.S.C. § 1983** requires the $405 civil filing fee under **28 U.S.C. § 1914(a).** A habeas petition, **as a miscellaneous civil filing, requires $15 and not the $5 habeas filing fee in federal court only for petitions under 28 U.S.C. § 2254 or § 2241 filed by prisoners.**

When Mr. Buchanan filed his pleadings, the Clerk correctly docketed the habeas corpus petition separately as Case No. 369 and charged the $15 miscellaneous fee, reflecting its treatment as a civil filing independent of removal. At the same time, however, the Clerk charged $405 for the civil rights complaint but, instead of opening a separate § 1983 docket, improperly attached that fee to the removal docket (368). In doing so, the Clerk's actions effectively acknowledged the existence of a civil rights claim distinct from the removal but failed to treat it procedurally as such.

This error rests squarely with the Clerk's office, not with Petitioner. It would be manifestly unjust to extinguish both the removal petition and the $405 civil rights filing fee on the basis of a misjoinder Petitioner neither caused nor intended.

Rule 59(e) authorizes this Court to correct such manifest errors. Federal courts retain authority to recharacterize pleadings to preserve substantive rights. **Castro v. United States, 540 U.S. 375, 381–82 (2003)**. Courts have also held that filing fees should not be forfeited where mischaracterization by the Clerk causes confusion. **Goins v. Decaro, 241 F.3d 260, 261 (2d Cir. 2001).**

The appropriate remedy here is twofold: (1) reinstate Case No. 368 as a pure removal petition under § 1443, supported by record-based federal questions, and (2) apply the $405 fee already paid toward a properly docketed § 1983 complaint against Prosecutor Nivison and Judge Berecz, whose conduct falls outside immunity protections. This approach realigns the dockets with statutory requirements and prevents Petitioner from losing both his right to removal and the § 1983 remedy he already paid to pursue.

**HECK v. HUMPHREY AND WALLACE v. KATO CONFIRM**
**THIS PETITION IS NOT BARRED**

In its dismissal, the Court implicitly suggested that the civil rights aspects of Mr. Buchanan's filing cannot be heard because such claims would be premature or barred under doctrines like **Heck v. Humphrey, 512 U.S. 477 (1994)**. That reliance is misplaced for two reasons: **(1)** Heck does not apply pre-conviction or pre-sentencing, and **(2)** not all of Petitioner's claims *"necessarily imply the invalidity"* of the conviction but instead address independent constitutional harms.

First, Heck itself applies only when there is a final conviction that has not been reversed, expunged, or invalidated. The Supreme Court clarified in **Wallace v. Kato, 549 U.S. 384, 393 (2007)**, that Heck does not bar claims brought pre-conviction, explaining that the bar arises only where there is an *"outstanding criminal judgment"* that would be invalidated by the § 1983 suit. Mr. Buchanan has not yet been sentenced; his conviction is not final. To extend Heck into this posture would be to expand it beyond its holding, shutting the courthouse doors before the conviction is even complete, a result the Supreme Court has expressly rejected.

Second, even if the Court were to treat certain claims as post-conviction, many of the federal rights at issue do not imply the invalidity of the judgment. The denial of compulsory process, the exclusion of defense witnesses, the refusal to docket pro se filings, the use of racially charged language by investigating officers, and the selective prosecution that shielded the white drug seller while targeting a Black defendant are all harms that exist regardless of conviction outcome. They implicate structural guarantees of due process and equal protection, not simply trial error. As the Supreme Court held in **Spencer v. Kemna, 523 U.S. 1, 17 (1998)**, Heck cannot be stretched to immunize ongoing violations of civil rights that can be remedied without necessarily overturning a conviction.

Moreover, the dismissal conflated distinct remedies. Removal under § 1443 is jurisdictional and requires no fee; habeas corpus under § 2241 is the proper vehicle to challenge ongoing unlawful detention; and § 1983 exists to remedy non-immunized damages claims. Mr. Buchanan has pursued each remedy in its proper channel: Case No. 368 for removal, Case No. 369 for habeas corpus, Case No. 187 for officer misconduct, and a forthcoming § 1983 action against Prosecutor Nivison and Judge Berecz for their investigative and conspiratorial misconduct. To dismiss 368 on the ground that civil rights claims *"belong in § 1983"* not only mischaracterizes the filing but improperly merges distinct remedies that Congress created for different purposes.

In short, Heck is inapplicable here for three reasons: **(1)** there is no final conviction, **(2)** many claims target harms independent of conviction validity, and **(3)** Petitioner has properly channeled his remedies through separate dockets, avoiding the risk of "*collateral attack*" that Heck was meant to prevent. To apply Heck here is manifest error, and reconsideration under Rule 59(e) is required.

## II. Sovereign Immunity Does Not Bar Relief in This Case

The Court dismissed claims against Judge Berecz on the basis of Eleventh Amendment sovereign immunity, citing **Hans v. Louisiana, 134 U.S. 1 (1890); Kimel v. Florida Board of Regents, 528 U.S. 62 (2000); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984); and Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).** Respectfully, none of these authorities foreclose the relief sought here. They govern suits for damages against the State or its arms in federal court. They do not prohibit: **(1)** jurisdictional removal under **28 U.S.C. § 1443; (2)** habeas corpus review under **28 U.S.C. §§ 2241–2254;** or **(3)** prospective injunctive and declaratory relief against state officers acting unconstitutionally in their individual capacities.

In Hans, the Court held that a State cannot be sued in federal court by one of its own citizens for damages absent consent. **Kimel and Pennhurst** reinforced that principle by prohibiting retroactive monetary relief and by clarifying that state law claims cannot be heard in federal court against the State itself. Will held that states and state agencies are not **"persons"** under § 1983 for purposes of damages. Yet none of these authorities extend immunity to bar **(a)** suits against officials in their personal capacities, **(b)** suits for prospective injunctive relief, or **(c)** federal habeas corpus review.

The Supreme Court has long recognized in **Ex parte Young, 209 U.S. 123, 159–60 (1908)**, that the Eleventh Amendment does not shield state officials from injunctive or declaratory relief when they act unconstitutionally. That doctrine remains the foundation of federal power to intervene against state officials who enforce void laws or act outside lawful authority. Where Judge Berecz and Prosecutor Nivison **colluded to fabricate a conspiracy, barred exculpatory evidence, and directed clerks to refuse filings**, they were **not** engaged in **protected judicial or prosecutorial acts.** They were engaged in unconstitutional conspiratorial conduct under color of law. Immunity does not extend to those acts.

The habeas petition further underscores this point. At the Clerk's direction, Petitioner's habeas corpus petition was filed separately under Case No. 369 and docketed as a miscellaneous civil filing. Yet the habeas petition is factually interdependent with the removal petition: both challenge the same unconstitutional detention arising from void summons, fabricated charges, and racially motivated prosecution. By dismissing removal claims while simultaneously ruling that habeas cannot be argued within this docket, the Court has effectively insulated unlawful detention from federal review. That result cannot be reconciled with Hans or its progeny. Habeas corpus is not subject to sovereign immunity because it runs against the custodian, not the State qua State. To bar habeas arguments in removal while segregating habeas into a separate docket is to nullify the writ altogether, exactly the kind of constitutional injury the Suspension Clause forbids.

Finally, the State's failure to respond to Petitioner's motion for temporary restraining orders and stay of proceedings cannot be dismissed as moot or immaterial. Default on a properly served motion operates as an admission of the allegations therein. See **Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).** The State's silence conceded the validity of the TRO and stay, which therefore function as an injunction restraining further harm to Petitioner. Continued detention in defiance of that default constitutes an ongoing violation of federal law and places state actors in contempt of this Court's authority. Under **Ex parte Young**, such defiance is actionable, and this Court must enforce the restraints already conceded by default.

Accordingly, Eleventh Amendment immunity does not bar removal, does not extinguish habeas review, and does not protect state officers acting in conspiracy under color of law. Nor does it shield state actors from the consequences of their default. To hold otherwise would

weaponize sovereign immunity as a license for officials to violate constitutional rights unchecked, a result wholly inconsistent with **Hans, Kimel, Pennhurst, and Will.**

### Default on Restraining Orders Operates as Binding Injunction; Clerk's Misjoinder Amplifies the Harm

The State of Idaho failed to respond to Petitioner's duly served motions for a stay of proceedings and temporary restraining orders. Under Rule 55(a) of the Federal Rules of Civil Procedure, such silence constitutes default, and under established precedent default operates as a concession of the factual allegations contained in the pleading. In **Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)**, the court held that default *"admits the facts alleged in the complaint and establishes liability."* Similarly, in **United Student Aid Funds v. Espinosa, 559 U.S. 260, 272 (2010),** the Supreme Court held that even orders entered without proper procedural form remain binding and enforceable where no objection is timely raised. Here, the State's failure to contest the restraining orders is dispositive. The allegations, that Eric Buchanan's continued detention and further prosecution violate the Constitution, must be taken as true, and the requested relief must be enforced.

Under Rule 65, temporary restraining orders and preliminary injunctions serve to prevent irreparable harm during the pendency of litigation. When unopposed, their effect is magnified. Federal courts have consistently recognized that a defendant who fails to respond to injunctive relief waives opposition, and the injunction becomes binding by operation of law. To treat the defaulted TROs as moot would contradict both Rule 55 and Rule 65 and would sanction further unlawful detention despite the State's concession by silence. Everyday Mr. Buchanan remains incarcerated in defiance of these restraints constitutes a continuing violation of the injunction now in effect.

The injustice is compounded by the Clerk's administrative misjoinder. As argued above, the Clerk directed Petitioner to split the habeas petition into a separate docket (369) while charging the $405 civil complaint fee to the removal docket (368). This misallocation blurred the distinct remedies of removal, habeas, and civil rights damages, leading the Court to dismiss the removal as if it were a § 1983 action, while simultaneously ruling that habeas claims could not be argued in this docket. The result is that Petitioner's removal rights, habeas rights, and § 1983 rights were all impaired by a clerical error rather than by any substantive defect in law.

This Court has both the power and the obligation to correct that error. In **Castro v. United States, 540 U.S. 375, 381–82 (2003),** the Supreme Court confirmed that federal courts may re-characterize filings to preserve litigants' rights and prevent forfeiture. To dismiss the removal outright while barring habeas arguments is to extinguish both remedies, a result not authorized by any precedent. Moreover, to extinguish the $405 fee already collected without crediting it toward a proper § 1983 action is inequitable and contrary to **28 U.S.C. § 1914(a),** which requires fees to correspond to the case actually filed.

Thus, two legal mandates now converge. First, by defaulting on the restraining orders, the State conceded that further detention and prosecution of Mr. Buchanan is unlawful, and an injunction is already in force. Second, by misfiling the civil rights fee, the Clerk obstructed the proper channeling of claims, leaving removal, habeas, and damages all in jeopardy of dismissal for reasons not attributable to the Petitioner. Together, these defaults and errors do not moot Mr. Buchanan's claims; they strengthen them. Federal jurisdiction is not only proper but necessary to enforce the restraints conceded by default, to cure the Clerk's misjoinder, and to vindicate Mr. Buchanan's constitutional rights.

## C. Adequacy of State Remedies

In 00113, the court assumed Idaho courts remained available to adjudicate federal rights. That assumption has since collapsed. Since that time:

- Petitioner's motions for bond reinstatement, dismissal for Brady violations, and habeas corpus were denied without hearings;
- A Brady motion was scheduled for the day of sentencing, making consideration impossible;
- Every pro se filing was rejected by the clerk unless funneled through standby counsel who refused to file.

These facts demonstrate the very "extraordinary circumstances" that *Younger v. Harris*, 401 U.S. 37 (1971), says justify federal intervention. Where state courts **structurally refuse to enforce federal rights**, federal jurisdiction is mandatory. *Georgia v. Rachel*, 384 U.S. 780 (1966).

## D. Conclusion

The dismissal in 00113 rested on procedural grounds and lack of racial claims. The instant case rests on new and independent facts: racially selective prosecution, collusion between judge and prosecutor to bar evidence, and systemic denial of hearings. Federal courts routinely hold that new factual violations create new removal grounds even if a prior petition was denied. See *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (recognizing that successive removals are proper where new events occur).

Accordingly, the 00113 dismissal cannot be used to bar this petition. To treat them as the same would be manifest error, ignoring the evolution of the case and the escalation of constitutional violations.

### IV. Younger Abstention Does Not Bar Federal Intervention

The Court has previously suggested that abstention under **Younger v. Harris, 401 U.S. 37 (1971)**, counsels against federal jurisdiction. That reliance ignores both the factual record and the well-established exceptions to Younger. Abstention is the exception, not the rule, and federal courts have a "*virtually unflagging obligation*" to exercise jurisdiction where state courts are unwilling or unable to enforce federal rights. **Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).**

In Younger, the Supreme Court instructed federal courts to refrain from interfering in ongoing state criminal prosecutions when the state forum is adequate to vindicate federal constitutional rights. But the Court also made explicit that abstention is not required in "*extraordinary circumstances*" where the state forum is structurally incapable of protecting federal rights. **Younger, 401 U.S. at 45**. Later cases clarified three exceptions: **(1)** where there is evidence of bad faith or harassment, **(2)** where the challenged statute is flagrantly unconstitutional, or **(3)** where there is no adequate opportunity in the state forum to raise federal claims. See **Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).**

Mr. Buchanan's case squarely falls within these exceptions. Since the dismissal in Case No. 00113, the record has only deepened to show that Idaho courts categorically refuse to hear his federal claims:

**Denial of Hearings**: Motions for bond reinstatement, Brady dismissal, and habeas corpus were summarily denied without hearings, foreclosing any "*meaningful opportunity*" to be heard. **See Armstrong v. Manzo, 380 U.S. 545, 552 (1965)** (due process requires a hearing "at a meaningful time and in a meaningful manner").

**Suppression of Brady Claims**: By scheduling the Brady motion on the day of sentencing, the court rendered it impossible to litigate before conviction. This is functionally equivalent to suppression itself, condemned in **Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Bagley, 473 U.S. 667, 682 (1985).**

**Systemic Clerk Blockade**: Every pro se filing was refused unless funneled through standby counsel who explicitly refused to file on Mr. Buchanan's behalf. This is a structural denial of access to the courts, violating **Faretta v. California, 422 U.S. 806 (1975), and McKaskle v. Wiggins, 465 U.S. 168 (1984).**

**Racial Animus and Selective Prosecution**: Officers openly used racial slurs and shielded the actual white drug seller from prosecution, while targeting Mr. Buchanan, a Black defendant, for conspiracy. **Yick Wo v. Hopkins, 118 U.S. 356 (1886), and Batson v. Kentucky, 476 U.S. 79 (1986)**, establish that racially selective prosecution itself denies equal protection.

These facts illustrate not a routine criminal prosecution, but a pattern of structural denial amounting to bad faith and harassment. When the state forum itself conspires with prosecutors to bar evidence, silence filings, and block constitutional claims, the *"adequate state remedy"* assumption underlying Younger collapses. Federal intervention is not just permitted,  it is mandatory. **See Georgia v. Rachel, 384 U.S. 780, 804 (1966)** (federal removal proper when state courts cannot or will not enforce equal civil rights).

Nor does the prior dismissal in 00113 change this analysis. That dismissal rested on the assumption that Idaho courts remained available to adjudicate federal rights. That assumption has since been disproved by events: **systemic denial of hearings, suppression of filings, and racial animus in prosecution**. The Supreme Court has made clear that successive removals are proper when new events establish new grounds. **Johnson v. Mississippi, 421 U.S. 213, 219 (1975)**. To treat 00113 as barring this petition would be manifest error, ignoring the evolution of the record and the escalation of constitutional violations.

In short, Younger abstention does not bar this Court's intervention. Where the state forum refuses to enforce federal rights, where federal claims are **denied hearings, and where racial animus infects the prosecution**, abstention would not reflect comity, it would abdicate duty. This case is the very definition of the "extraordinary circumstances" that compel federal jurisdiction.

Respectfully submitted,

Eric Buchanan

Petitioner, sui juris

## *NOTORIAL* JURAT

*COUNTY OF KOOTENAI )*

SS )

*STATE OF IDAHO            )*

*On this 5th day of ~~June~~ August , 2025, Eric Buchanan did personally appear before me, identified by (form of identification) and did take and Oath and stated the above statements are true and correct to the best of his knowledge and belief. Subscribed by me the below identified Notary Public in and for the State of Idaho, on the date first above written.*

*(Name of Notary)*                                             *{Seal}*

My Commission ends ___June 17th 2028___

# EXHIBIT

# A

---------- Forwarded message ---------
From: **Edward Lawlor** <Edward.Lawlor@spd.idaho.gov>
Date: Wed, Jun 25, 2025 at 11:35 AM
Subject: RE: ERIC BUCHANAN
To: Eric Buchanan <atozhomeworx@gmail.com>

I am not his attorney of record. I am simply standby counsel for trial with limited
authority, and the trial is over in both cases, which means my authority is nil.

I will not take direction any differently from you, Mr. Buchanan, or anyone else unless
and until the court determines otherwise. Please stop contacting me about his case and
filing court pleadings. Thank you.

Regards,

Edward J. Lawlor
Idaho State Public Defender Office
1450 Northwest Blvd., Suite 301
Coeur d'Alene, ID 83814
PH:  208.415.3800
FAX:  208.626.4199

**The information contained in this communication is privileged and confidential. If you
have received this communication in error, please forward back to the sender and delete
your copy immediately.   You are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited.**

**From:** Eric Buchanan <atozhomeworx@gmail.com>
**Sent:** Wednesday, June 25, 2025 10:49 AM
**To:** Edward Lawlor <Edward.Lawlor@spd.idaho.gov>
**Subject:** ERIC BUCHANAN

CAUTION: This email originated outside the State of Idaho network. Verify links and attachments
BEFORE you click or open, even if you recognize and/or trust the sender. Contact your agency
service desk with any concerns.

---

As are you listed as counsel for Eric Ramon Buchanan and nothing Eric turns in is being honored. Eric has
asked me to forward these to you so that you can turn them in, and get a hearing set for 6/30/25. He
would like it heard at the same hearing after you withdraw from the case. If you have any questions, you
can reach me at 5098796704. Or reach out to Eric at Kootenai county.
Thanks

# EXHIBIT

# B

Eric Ramon Buchanan

10603 E 28th Ave

Spokane Valley, Washington 99206

Sui Juris

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

Federal District Court Case No: _____

Lower Tribunal Case No: CR28-24-1747

And related case CR28-23-6840

*Eric Ramon Buchanan*, Sui Juris

Petitioner,

v.

RESPONDENT.

**The Honorable Judge BERECZ; H. LAMONT BERECZ ; L. BERECZ; BERECZ, Lamont;**
**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY;** Molly Nivison; M. Nivison;

Nivison, Molly ; And DOE'S; Doe's

---

**In the Nature of a Complaint for Deprivation of Rights under 42 U.S.C. §§ 1983,**
**1985, 1986, and related statutes**

---

*Eric Ramon Buchanan*

*10603 E 28th Ave*

*Spokane Valley, Washington 99206*

**Verified Civil Rights Complaint.**

1

# TABLE OF CONTENTS

Table Of Contents-                                                      1

Statement of the Case                                                   3

Jurisdiction and Venue                                                  4

Parties                                                                 5

Standing and Status                                                     6

Procedural History                                                      7

Claims/Statement of Facts                                             08
    a.  MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY     08
    b.  H. H. LAMONT BERECZ                           18
        1.  Prayer For Relief      27

Verified Civil Rights Complaint.

## STATEMENT OF THE CASE

This Petition arises from a complex and deeply troubling series of events in Kootenai County, Idaho, wherein state actors, including prosecuting attorneys, law enforcement officers, and a sitting magistrate judge, conspired through color of law to deprive Petitioner Eric Ramon Buchanan of rights guaranteed under the Constitution and laws of the United States.

The factual record reveals an orchestrated campaign of misconduct, a stark indictment of a State judiciary and prosecutorial apparatus that has willfully conspired, under color of law, from warrantless GPS tracking and pretextual stops unsupported by probable cause, to suppression of exculpatory evidence, alteration of jury instructions, and the manufacturing of an impossible conspiracy charge in violation of the well-established plurality rule. Depriving Eric Ramon Buchanan of his most fundamental and sacred rights secured by the Constitution and laws of the United States by securing a conviction through a conspiracy that could not legally exist under the plurality rule, State actors have collectively trampled the protections guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments. Petitioner's unlawful conviction and continued detention, which as of the date of this filing constitutes an ongoing deprivation of liberty, property, and fundamental constitutional safeguards.

Petitioner is pursuing redress for an orchestrated sequence of manufactured charges, knowingly false and misleading evidentiary presentations, suppression of exculpatory evidence, unlawful searches and seizures in federal court under 42 U.S.C. §§ 1983 and 1985, challenging related deprivations of rights by many of the same state actors, thereby placing this matter squarely within the jurisdiction of this Honorable Court under 28 U.S.C. §§ 1331, 1343, 1367,. Because the claims arise from a common nucleus of operative facts, including the same unlawful investigation, prosecution, and continued restraint, judicial economy and the avoidance of conflicting rulings compel that all related state and federal proceedings be consolidated in this forum.

This Petition does not arise from mere legal error; it emerges from a calculated pattern of constitutional violations designed to fabricate criminal liability where none existed. It further lays bare the dark collusion between prosecutors, law enforcement officers, and a judicial officer who refused to recuse himself despite direct conflicts of interest and then proceeded to facilitate the miscarriage of justice. The petitioner respectfully submits that the grave constitutional errors permeating these cases demand immediate federal intervention, and that the interests of justice,

Verified Civil Rights Complaint.

efficiency, and respect for federally protected rights compel the Court to grant the relief herein requested.

Eric Ramon Buchanan has been unlawfully detained since April 29, 2025, kidnapped under color of state authority, suffering immense personal harm, loss of liberty, emotional anguish, reputational destruction, and economic deprivation — all because state actors chose to weaponize their offices against him rather than uphold their constitutional oaths.

Federal intervention is not just proper; it is mandated under the Supremacy Clause, 28 U.S.C. §§ 1331, 1343, and under clear precedent from the United States Supreme Court that federal courts must intervene when state processes are used as instruments of oppression. This Court possesses not only the power but the solemn duty to secure the blessings of liberty and to halt these ongoing violations of federal law and constitutional guarantees.

The Petitioner therefore invokes the original jurisdiction of this United States District Court to redress these grave violations, to join the intertwined state and federal controversies in one proceeding under 28 U.S.C. §§ 1367 and to restore what remains of the rule of law in this matter.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. Federal question jurisdiction arises under the Constitution and laws of the United States, including the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, and statutes including 42 U.S.C. §§ 1983, 1985, and 1986. Venue is proper under 28 U.S.C. § 1391(b). Diversity jurisdiction under 28 U.S.C. § 1332 also exists, as Plaintiff is domiciled in Washington and Defendants are domiciled in Idaho.

Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District, including the investigatory misconduct, prosecutorial decisions, judicial rulings, and unlawful detention of Petitioner.

## Sovereign Immunity Does Not Bar This Action

Defendants Nivison and Berecz will undoubtedly attempt to invoke Eleventh Amendment sovereign immunity, and the Court has previously cited **Hans v. Louisiana, 134 U.S. 1 (1890); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984); Kimel v. Florida Board of Regents, 528 U.S. 62 (2000); and Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989),** to justify dismissal of related claims. Respectfully, those authorities govern only suits against the State itself or its arms for damages. They do not control here, because Plaintiff seeks damages against

Page **4** of **30**

Verified Civil Rights Complaint.

Defendants in their individual capacities, and declaratory and injunctive relief against them in their official capacities.

In Hans, the Supreme Court barred a citizen from suing his own State for debt repayment, a classic example of an action against the State qua State. Pennhurst extended that principle to state-law claims, holding that federal courts cannot order States to comply with state law. Kimel confirmed that sovereign immunity prevents Congress from abrogating immunity under certain statutes (like the ADEA) where § 5 of the Fourteenth Amendment was not properly invoked. Will clarified that States and state agencies are not "persons" under § 1983 when sued for damages. None of these cases, however, foreclose suits against state officials in their personal capacities for unconstitutional conduct, nor do they preclude prospective injunctive relief under **Ex parte Young, 209 U.S. 123, 159–60 (1908).**

The Supreme Court has repeatedly affirmed that state officers may be sued in their individual capacity for damages when they act under color of law to deprive constitutional rights. **Hafer v. Melo, 502 U.S. 21, 31 (1991)**. Similarly, judges and prosecutors are not immune when their actions extend beyond traditional judicial or prosecutorial functions, such as colluding to fabricate evidence, barring exculpatory witnesses, or directing clerks to reject filings. **Buckley v. Fitzsimmons, 509 U.S. 259, 276–77 (1993); Ex parte Virginia, 100 U.S. 339, 346 (1879).**

Thus, while the cases cited by the Court confirm that States themselves cannot be haled into federal court for damages, they do not insulate Defendants Nivison and Berecz from liability for their individual misconduct, nor do they prevent this Court from issuing prospective declaratory or injunctive relief to halt ongoing violations. To apply Hans, Pennhurst, Kimel, and Will here would be to stretch them far beyond their holdings, in direct conflict with **Ex parte Young** and **Hafer**.

## II. PARTIES

**1. Plaintiff / Petitioner**

Eric Ramon Buchanan (hereinafter "Plaintiff" or "Petitioner"), sui juris is a private individual of the Washington Republic, and a domiciliary of the Washington Republic. Plaintiff is not a 14th Amendment "citizen" or subject of the corporate United States but is a free inhabitant under Article IV of the Articles of Confederation, reserving all unalienable rights secured by the Constitution for the United States of America and the Bill of Rights. Plaintiff is competent to testify and brings these

Page **5** of **30**

Verified Civil Rights Complaint.

claims in his private capacity, having suffered actual injury including unlawful deprivation of liberty, mental anguish, reputational harm, and economic damages.

**2. Defendants**

**(a) Molly Nivison Deputy Prosecuting Attorney**

At all relevant times, Defendant **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** was acting in her official capacity as a prosecuting attorney for Kootenai County, Idaho, under color of law. She is sued in both her individual and official capacities for actions outside the scope of prosecutorial immunity, including investigatory, administrative, conspiratorial, and fraudulent acts undertaken personally.

**(b) Judge H. Lamont Berecz**

At all relevant times, Defendant H. LAMONT BERECZ was acting as a judicial officer within the First Judicial District of Idaho, County of Kootenai, under color of state law. He is sued in his individual and official capacities for acts undertaking in the clear absence of jurisdiction, motivated by bias, conflicts of interest, and participation in conspiratorial conduct that deprived Plaintiff of rights secured by the Constitution.

**3. Related Defendants and Doe Parties**

Plaintiff reserves the right to amend this petition or complaint to add additional parties or substitute Doe defendants once discovery or investigation reveals further identities of individuals who participated in the deprivation of his rights under color of law.

## II. STANDING AND STATUS

I, Eric Buchanan sui juris hereby declares that I am a private Individual and am not a "citizen" as defined under the Fourteenth Amendment of the United States Constitution (i.e., a federal citizen subject to the jurisdiction of the United States under the 14th Amendment. I instead assert my status as a private individual under common law, endowed with inalienable rights that preexist and supersede any statutory or federal citizenship status.

I am a man operating in private on the soil of the Washington Republic, not a corporate or federal U.S. citizen as defined in **Title 8 U.S.C. §1401**, and I do not reside in or voluntarily submit to the jurisdiction of the District of Columbia, federal territories, or any subsidiary agencies thereof.

Page **6** of **30**

Verified Civil Rights Complaint.

I retain all unalienable rights secured by God and the Constitution for the **united States of America (1787), the Bill of Rights (1791),** and the Idaho State Constitution. I do not waive any rights by silence, presumption, adhesion contract, or acquiescence.

Under the original Constitution and common law principles, sovereignty resides with "We the People", who possess inherent rights that cannot be abridged by statutory law or federal definitions of citizenship. The Fourteenth Amendment, ratified post-Civil War, created a new category of federal citizenship which, by its own terms, does not replace nor supersede the common law rights and private Individuals.

This position is supported by the following authority:

**Barron v. Baltimore, 32 U.S. 243 (1833):** The Supreme Court held that the Bill of Rights limits only the federal government and affirmed that common law rights remain with the people and the states.

While the Idaho Constitution, Article I, affirms the inalienable rights of its citizens, these rights are coextensive with, and secured by, the U.S. Constitution's Due Process and Equal Protection Clauses. The state's failure to safeguard these rights constitutes a violation of federally protected liberties enforceable under **42 U.S.C. § 1983** and subject to this Court's jurisdiction under **28 U.S.C. §§ 1331** and 1343.

Accordingly, Mr. Buchanan invokes the jurisdiction of the common law courts, which retain original and exclusive jurisdiction over men and woman asserting their God given rights, free from statutory or constitutional definitions imposed by the Fourteenth Amendment.

Eric hereby reserves all rights and privileges under common law and demands that his case be adjudicated in a forum recognizing these inherent rights and not under the jurisdiction of statutory or federal citizenship constructs.

COMES NOW the Petitioner: I, Eric Buchanan, a living man, sui juris, competent to testify, and a private individual of the Washington Republic, and I do hereby solemnly affirm, declare, and state the following to be true, correct, and complete to the best of my firsthand knowledge, belief, and understanding. I do so under penalty of perjury under the laws of the Idaho Republic and the United States of America

## PROCEDURAL HISTORY

Petitioner, Eric Buchanan was charged in the First Judicial District of the State of Idaho, in and for the County of Kootenai, with the offense(s) of Conspiracy to deliver a Controlled Substance,

Page **7** of **30**

Verified Civil Rights Complaint.

delivery of a controlled substance under Case No. CR28-24-1747 (Exhibit A) And felony Eluding under case No. CR28-23-6840 (Exhibit B). Those have an enhanced persistent violator attached to them from charges in 2006 and 2018

1. Petitioner was tried before a jury on or about April 28 and 29, 2025 (CR28-24-1747) and May 2nd, 2025, (CR28-23-6840). At the conclusion of the trial on April 29, 2025, and May 2, 2025, the jury returned a verdict of guilty

2. On July 28th, 2025, the Honorable **H. LAMONT BERECZ** will sentence Petitioner to a term to be determined but can be anywhere from 5 years to 25 years and placed in custody of the Idaho Department of Correction.

3. Petitioner filed a notice of appeal (Exhibit C) with the Idaho Court of Appeals on June 10, 2025, on the conspiracy case and June 20, 2025, on the eluding case, raising issues including but not limited to Due Process violations, Brady violations, plurality rule violations, improper jury instructions, evidentiary rulings, lack of corroborating evidence. Manufacturing a conspiracy, fourth amendment violations for unwarranted GPS tracking, and unlawful searches. No appellate brief has been filed, and the appellate court has not yet heard this case.

4. Petitioner did file a petition and writ for habeas corpus relief (Exhibit D) and a Emergency Motion For Reinstatement Of Bond Pending Sentence (Exhibit E) in this case but H. LAMONT BERECZ on June 9, 2025, denied both petitions prejudicially without any hearing for the motion to be heard on its merits (Exhibit F)

5. A motion to Dismiss for Brady Violations (Exhibit G) is set to be heard on the same day as sentencing despite the motion being filed well over a month before the sentencing date

## Claims/Statement of Facts/

Comes now, I, Eric Buchanan, a private Individual of the Washington Republic, sui juris, competent to testify, and I do hereby solemnly affirm, declare, and state the following to be true, correct, and complete to the best of my firsthand knowledge, belief, and understanding. I do so under penalty of perjury under the laws of the Idaho Republic and the united States of America and hereby Accuse Judge H. LAMONT BERECZ, Prosecutor Molly Nivison Deputy Prosecuting Attorney,

**VERIFIED CHARGING INSTRUMENT AGAINST MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**

(In the Nature of a Verified Complaint and Claim for Relief)

Page **8** of **30**

Verified Civil Rights Complaint.

In regards to **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**

Mr. Buchanan does accuse and claim Prosecutor **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** Did commit

**Count 1**--- Denial of Due Process (Brady / suppression / improper instructions) *42 U.S.C. §§ 1983 & 1988)*

**Count 2** — Denial of Right to an Impartial Jury 42 U.S.C. § 1983.

**Count 3** — Warrantless GPS Tracking under 18 U.S.C. § 3117 & Fourth Amendment18 U.S.C. § 242, punishable by up to ten years imprisonment, fines, or both.

**Count 4**--- Willful Suppression of Exculpatory Evidence in Violation of Constitutional Due Process and Federal Statutes) Title 18 U.S.C. § 242, a felony punishable by fines, imprisonment of up to ten years, or both, together with potential civil remedies under 42 U.S.C. § 1983 and the award of costs and attorneys' fees under 42 U.S.C. § 1988.

**Count 5** — Warrantless Vehicle Search & Fabricated Probable Cause under Fourth Amendment, 18 U.S.C. § 2236 (unlawful searches by officers) and 18 U.S.C. § 3117 (regulating mobile tracking devices), together constituting felonies under 18 U.S.C. § 242.

**Count 6**---Concealment or Falsification of Records Under Color of Law**18 U.S.C. § 2071** (concealment or removal of public records) and **18 U.S.C. § 1519** (destruction, alteration or falsification of records in federal investigations), each punishable as felonies. Presentation of False Jury Instructions under Fed. R. Crim. P. 30 and 18 U.S.C. § 242

**Count 7** — Manufacturing a Conspiracy (due process under the Fifth and Fourteenth Amendments and the right to a fair trial under the Sixth Amendment, in violation of 18 U.S.C. § 241, a felony punishable by imprisonment up to ten years, fines, or both.

**Count 8** — Conspiracy to defraud the United States 18 U.S.C. § 371

Deprivation of Rights under 18 U.S.C. § 242 (separate general count)

**Count 9** — Kidnapping by Unlawful Detention (18 U.S.C. § 1201 & § 1203) (hostage-taking and unlawful confinement by state actors), a felony punishable by imprisonment for any term of years up to life.

Page **9** of **30**

Verified Civil Rights Complaint.

**Count 10 —** Aggravated Deprivation & Continuing Confinement Without Lawful Basis( Fourth, Fifth, Sixth, and Fourteenth Amendments in violation of 18 U.S.C. § 242, constituting aggravated deprivation of rights under color of law).                                                    **Count 11---**

Deprivation Of Rights Under Color Of Law (4th, 5th, 6th and 14th amendments)

(Felony under 18 U.S.C. § 242; actionable under 42 U.S.C. § 1983)

**Count 12---**Void Summons Issued Without Judicial Signature In Violation Of Fourth And Fourteenth Amendments

**COUNT 13:** Unconstitutional Amended Charges Issued Without Personal Judicial Determination

**COUNT 14:** Attorney-Signed Pleadings And Memoranda Insufficient Under The Fourth, Fifth, And Fourteenth Amendments

**COUNT 15:** Defective Original Criminal Complaint Lacking Oath Or Affirmation By Complainant

COUNT 16: Clerk Lisa Peterson Issuing Rubber-Stamped Notices Without Judicial Authority

**Comes now** Eric Ramon Buchanan, a private individual of the Washington Republic, sui juris , accuse and claims as follows that the above named defendant, committed as follows

### I. Non-Criminal Civil Rights Violations *(subject to declaratory and injunctive relief under 42 U.S.C. §§ 1983 & 1988)*

**Count 1:** Denial of Due Process (Brady / suppression / improper instructions) *42 U.S.C. §§ 1983 & 1988)*

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about June 2023 through May 2025, in Kootenai County, Idaho, did knowingly and unlawfully deprive Eric Ramon Buchanan of due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, by prosecuting a legally impossible conspiracy charge absent the required plurality under law, thereby subjecting herself to civil liability under 42 U.S.C. § 1983, which grants equitable relief including injunctions and declaratory judgments.

**Count 2: Denial of Right to an Impartial Jury 42 U.S.C. § 1983**

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about April 29, 2025, in Kootenai County, Idaho, did willingly and unlawfully deprive Eric Ramon Buchanan of his Sixth Amendment right to a fair trial and an impartial jury, by altering jury instructions **(See Exhibit N)** to

Page **10** of **30**

Verified Civil Rights Complaint.

improperly include "did aid and abet" under Instruction No. 1 for conspiracy to deliver a controlled substance, without a separate charge or foundation, and by failing to instruct the jury that they could not convict solely on co-conspirator testimony**(See Exhibit N)** without corroborating evidence, a violation of constitutional guarantees enforceable under 42 U.S.C. § 1983

**II.    Criminal Violations Under Color Of Law** *(felonies punishable under federal criminal statutes)*

**Count 3 (Felony):** Warrantless GPS Tracking under 18 U.S.C. § 3117 & Fourth Amendment18 U.S.C. § 242, punishable by up to ten years imprisonment, fines, or both

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about the 29th day of April, 2025, in Kootenai County, Idaho, being a state prosecuting attorney acting under color of law, did willfully subject Eric Ramon Buchanan to the deprivation of rights secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments, including by knowingly presenting evidence from warrantless GPS tracking**(See Officer Testimony at Pre Trial)** conducted without any judicial warrant or order, thereby committing the federal felony of Deprivation of Rights Under Color of Law, contrary to 18 U.S.C. § 242, punishable by up to ten years imprisonment, fines, or both.

**Count 4 (Felony):** Willful Suppression of Exculpatory Evidence in Violation of Constitutional Due Process and Federal Statutes)

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about February 2023 to May 2025, in Kootenai County, Idaho, while acting under color of law in her capacity as a state prosecuting attorney, did willfully and knowingly suppress material exculpatory evidence, including:

1. Dashcam video conclusively showing that Eric Ramon Buchanan used his blinker**(See Exhibit I)**, directly contradicting the officers stated probable cause for the traffic stop that formed the basis of the related charges;

2. Bodycam footage demonstrating that officers searched Buchanan's vehicle for narcotics without a warrant**(See Exhibit J)**, found no contraband, and openly stated "Where did he put the cocaine?" evidencing fabricated probable cause;

3. An induced canine alert further impeaching the State's narrative; **(See Exhibit K)**

thereby denying Eric Ramon Buchanan his constitutionally guaranteed rights to due process of law under the Fifth and Fourteenth Amendments, his Sixth Amendment right to present a complete defense, and rights secured under **Brady v. Maryland**, 373 U.S. 83 (1963).

Page **11** of **30**

Verified Civil Rights Complaint.

These acts constitute criminal deprivation of rights under color of law, in violation of Title 18 U.S.C. § 242, a felony punishable by fines, imprisonment of up to ten years, or both, together with potential civil remedies under 42 U.S.C. § 1983 and the award of costs and attorneys' fees under 42 U.S.C. § 1988.

**Count 5 (Felony):** Warrantless Vehicle Search & Fabricated Probable Cause under 18 U.S.C. § 2236 (unlawful searches by officers) and 18 U.S.C. § 3117 (regulating mobile tracking devices), together constituting felonies under 18 U.S.C. § 242

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about April 29, 2025,in Kootenai County Idaho did present unlawfully obtained evidence of a warrantless search**(See Exhibit J)** in violation of the Fourth Amendment, knowingly misleading the court and jury in violation of 18 U.S.C. § 2236 (unlawful searches by officers) and 18 U.S.C. § 3117 (regulating mobile tracking devices), together constituting felonies under 18 U.S.C. § 242.

**Count 6 (Felony):** Concealment or Falsification of Records Under Color of Law

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about February 2023 to May 2025in Kootenai County Idaho, did knowingly conceal and fail to produce public records and investigative documents **(See Exhibit R)** under discovery obligations, acts constituting violations of 18 U.S.C. § 2071 (concealment or removal of public records) and 18 U.S.C. § 1519 (destruction, alteration or falsification of records in federal investigations), each punishable as felonies.

**III. Conspiracy Against Rights & To Defraud The United States** *(criminal felonies under federal law)*

**Count 7 —** Manufacturing a Conspiracy

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about the 29th day of April, 2025, and at other times in Kootenai County, Idaho, did willfully conspire or agree with **OFFICER M. SYCHLA K70**, **OFFICER M. EDWARDS K77**, **OFFICER C. ZIEGLER K96**, and **H. LAMONT BERECZ** to injure, oppress, threaten(See Exhibit S 00.00), or intimidate Eric Ramon Buchanan in the free exercise and enjoyment of rights secured by the Constitution and laws of the United States, including due process under the Fifth and Fourteenth Amendments and the right to a fair trial under the Sixth Amendment, in violation of 18 U.S.C. § 241, a felony punishable by imprisonment up to ten years, fines, or both.

Page **12 of 30**

Verified Civil Rights Complaint.

1. the Honorable Judge Patrick McFadden On June 29, 2023, in Kootenai County, Idaho, Did dismiss Case No. CR28-23-7483, a charge of delivery of a controlled substance against Eric Buchanan, due to lack of evidence (**See Exhibit P** ).

2. **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** On February 1, 2024 ,in Kootenai County Idaho Did willingly and intentionally cause to be filed a new charging document under Case No. CR28-24-1747 **(See Exhibit A),** which revived the previously dismissed delivery charge without any new independent evidence

3. **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** On February 1, 2024 ,in Kootenai County Idaho Did willingly and intentionally add a count of conspiracy to deliver a controlled substance, to avoid scrutiny for reviving a case with no new evidence **(See Exhibit A )**

1. **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** On April 22, 2025,in Kootenai County Idaho Did willingly and intentionally direct officers **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96**to arrest Allison Kimber **(See Exhibit L)** for delivery of a controlled substance and conspiracy to deliver a controlled substance

2. **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** On April 22, 2025,in Kootenai County Idaho Did willingly and intentionally charge Kimber **(See Exhibit L)** with conspiracy to deliver a controlled substance, for conduct occurring in over two years prior in February 2023 at the Beacon Tavern in Coeur d'Alene, Idaho, and did so to manufacture coerced testimony only 6 days before trial with no other individual corroborating evidence to successfully convict Mr. Buchanan.

3. **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** On April 24, 2025,in Kootenai County Idaho Did willingly and intentionally four days before Mr. Buchanan's scheduled trial, did intentionally grant use immunity to Allison Kimber **(See Exhibit M)** for the purpose of compelling her testimony against Mr. Buchanan, despite knowing that Kimber's testimony was uncorroborated and that granting immunity destroyed the plurality re/uired to sustain a conspiracy charge under *United States v. Escobar de Bright*, 742 F.2d 1196 (9th Cir. 1984).

4. , **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** On April 29, 2025 in Kootenai County Idaho did willingly and Intentionally move for a special jury instruction that "the elapse of time since the commission of the alleged offense shall not be attributed to either the State or

Verified Civil Rights Complaint.

the Defendant, and the jury shall not speculate as to the reasons,"**(See Exhibit T)** in order to prevent the jury from considering the suspicious delay and the orchestrated timing of charging Kimber days before trial**(See Exhibit L).**

5. **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96**On or about February 2023 to May 2025 in Kootenai County Idaho Did  under **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY's** direction, willfully and unlawfully act under color of state law by coordinating overt acts to conspire and deprive Mr. Buchanan of his rights and freedom**(See Full Exhibit File and Case History)**

6. **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96**On or about February 2023 to May 2025 in Kootenai County Idaho under **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY's** direction Did willfully and unlawfully arrest Allison Kimber and Charge her with Two Felony's to coerce testimony and Did manufacture a conspiracy case against Mr. Buchanan by doing so,

7.  **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96**On or about February 2023 to May 2025 in Kootenai County Idaho under **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY's** direction Did willfully and unlawfully deprive Mr. Buchanan of rights secured by the Fifth and Fourteenth Amendments, and

8. **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96**On or about February 2023 to May 2025 in Kootenai County Idaho under **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY's** direction did willfully and unlawfully Manipulate evidence and did coerce testimony and did obstruct the fair administration of justice.

9. As a result of these deprivations under color of law, Mr. Buchanan Does suffer from an unlawful conviction,

10. Mr. Buchanan does suffer continuing constitutional injury and does suffer loss of liberty,

   o **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** and officers **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96**On or about February 2023 to May 2025 in Kootenai County Idaho Did Violate 42 U.S.C. § 1983 by depriving Buchanan of due process and fair trial rights.

   o **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** and officers **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96and**

Page **14** of **30**

Verified Civil Rights Complaint.

**Judge H. LAMONT BERECZ** On or about February 2023 to May 2025 in Kootenai County Idaho Did Violate 42 U.S.C. § 1985(3) by conspiring to deprive Mr. Buchanan of equal protection and impartial legal proceedings under the laws of the United States.

11. Relief is proper under 42 U.S.C. § 1983 and § 1985(3), with jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3)-(4), and the Court may grant declaratory relief under 28 U.S.C. § 2201, vacatur of the conviction, compensatory damages, and such further relief as may be just and proper.

**Count 8** — Conspiracy to Defraud the United States (18 U.S.C. § 371)

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY**, on or about February 2023 to May 2025 in Kootenai County Idaho, did knowingly conspire with officers **OFFICER M. SYCHLA K70, OFFICER M. EDWARDS K77, OFFICER C. ZIEGLER K96 and Judge H. LAMONT BERECZ** to impair, obstruct, and defeat the lawful functions of the United States, specifically the integrity of the judiciary and the administration of justice, by deceit, trickery, and misrepresentation, in violation of 18 U.S.C. § 371, a felony offense punishable by fines or imprisonment up to five years, or both..

**Count 10** — Ongoing Aggravated deprivation Under Color of Law, **A Felony**

**MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** from April 29, 2025 to the present in Kootenai County Idaho, Did cause and continues to cause the unlawful imprisonment of Eric Ramon Buchanan under a conviction obtained by constitutional violations, thereby depriving him of his liberty under the Fourth, Fifth, Sixth, and Fourteenth Amendments in violation of 18 U.S.C. § 242, constituting aggravated deprivation of rights under color of law.

**COUNT: 11**---Deprivation Of Rights Under Color Of Law

(Felony under 18 U.S.C. § 242; actionable under 42 U.S.C. § 1983)

**1.** That on or about April 29, 2025, in Kootenai County, Idaho, Prosecutor **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** did knowingly and willfully, under color of state law, subject Eric Ramon Buchanan to deprivation of rights secured by the Constitution of the United States, in violation of 18 U.S.C. § 242 Felony deprivation of rights under color of law.

**2.** These rights included, but were not limited to:

- The Fourth Amendment right to be free from unreasonable searches and seizures, violated by admitting warrantless GPS tracking and warrantless vehicle searches justified by fabricated probable cause.

Page **15** of **30**

Verified Civil Rights Complaint.

- The Fifth and Fourteenth Amendment rights to due process, violated by suppressing exculpatory dashcam footage (showing Buchanan did use his blinker **(See Exhibit I)** and bodycam footage showing officers searched for drugs without cause **(See Exhibit J).**
- The Sixth Amendment right to a fair trial by an impartial jury, violated by altering jury instructions **(See Exhibit N)** to include "did aid and abet" language outside the actual charge, and failing to instruct that conviction could not rest solely on co-conspirator testimony without independent corroboration **(See Exhibit N).**

**3.** Relief is proper under:

- **18 U.S.C. § 242**, a felony punishable by up to ten years in prison, fines, or both.
- **42 U.S.C. § 1983**, providing a direct federal cause of action for damages and equitable relief, with costs and attorneys' fees recoverable under **42 U.S.C. § 1988.**

**COUNT 12:** Void Summons Issued Without Judicial Signature In Violation Of Fourth And Fourteenth Amendments **(See Exhibit U)**

Petitioner alleges that the criminal summons issued in Idaho Case Nos. CR28-24-1747 was mechanically signed solely by a deputy clerk, without the signature or personal hand of a magistrate, in direct violation of:

- Idaho Criminal Rule 4(a):

"Upon the finding of probable cause, the magistrate must issue an arrest warrant or a summons under the magistrate's hand and sign the warrant or summons."

- The Fourth Amendment, which requires all process initiating the restraint of liberty to be issued upon probable cause by a neutral and detached magistrate.
- **Shadwick v. City of Tampa, 407 U.S. 345, 351-353 (1972),** holding that warrants or summonses must issue under the authority of a neutral judicial officer, not a clerk acting ministerially.

As such, the summons was void ab initio, failed to confer personal jurisdiction over Petitioner, and violated the due process guarantees of the Fourteenth Amendment. Any subsequent detention or prosecution arising therefrom is constitutionally invalid.

**COUNT 13:** Unconstitutional Amended Charges Issued Without Personal Judicial Determination

Petitioner further alleges that the State of Idaho materially amended the charges in the above-captioned criminal cases. However, these amended charges were not personally reviewed or hand

Verified Civil Rights Complaint.

signed by a neutral magistrate, but were instead approved by means of a mere rubber stamp, violating **(See Exhibit V)**

- **Idaho Criminal Rule 7(c),** requiring that an information be signed by the prosecuting attorney and founded upon valid probable cause.
- **Idaho Criminal Rule 4(a) & (b),** requiring that criminal process issue under the hand of the magistrate upon a sworn showing of probable cause.
- The Fourth Amendment, which demands probable cause "supported by Oath or affirmation" and determined by a neutral magistrate.
- **Gerstein v. Pugh, 420 U.S. 103 (1975),** mandating a neutral judicial determination of probable cause.
- **Coolidge v. New Hampshire, 403 U.S. 443 (1971),** condemning magistrates who serve as mere rubber stamps.

The defective approval of these amended charges rendered the amended charging instruments void ab initio, depriving the state court of jurisdiction and violating Petitioner's rights under the Fourth and Fourteenth Amendments.

**COUNT 14:** Attorney-Signed Pleadings And Memoranda Insufficient Under The Fourth, Fifth, And Fourteenth Amendments **(See Exhibit W)**

Petitioner asserts that numerous motions and pleadings filed in this case, both in the state proceedings and in subsequent federal actions, were unsigned by the actual moving parties or not signed at all on the motion itself, with only the supporting memorandum bearing an attorney's signature. This violates:

- **Fed. R. Civ. P. 11(a) & Idaho R.C.P. 11(a)(1):**

"Every pleading, written motion, and other paper must be signed… An unsigned paper shall be stricken."

- Trinsey v. Pagliaro, 229 F.Supp. 647 (E.D. Pa. 1964), which holds that statements of counsel are not evidence and cannot establish material facts.

Such defects deny Petitioner the procedural due process guaranteed by the Fifth and Fourteenth Amendments, and render any orders predicated upon these defective motions constitutionally infirm.

**COUNT 16:** Clerk Issuing Rubber-Stamped Notices Without Judicial Authority**(See Exhibit Q)**

Page **17** of **30**

Verified Civil Rights Complaint.

Petitioner further alleges that Clerk Lisa Peterson and her deputies issued multiple "notices of hearing" and scheduling orders under mechanical signature or automated process, without any indication of a judicial directive, violating:

- Idaho Criminal Rule 54(a):

"The clerk has authority to sign and enter all judgments and orders when ordered by the court."

- The due process clauses of the Fifth and Fourteenth Amendments, as such notices unlawfully compelled Petitioner to appear without valid judicial process.

These ultra vires acts by the clerk constitute actions under color of state law that deprived Petitioner of constitutional rights, actionable under 42 U.S.C. § 1983,

**All of which is contrary to the form, force, and effect of the statute in such case made and provided and against the peace and dignity of Eric Ramon Buchanan. Said complainant therefore prays for proceedings according to law.**


**VERIFIED CHARGING INSTRUMENT AGAINST H. LAMONT BERECZ**

**(In the Nature of a Verified Complaint and Claim for Relief)**

**In regards to Judge H. LAMONT BERECZ**

**Mr. Buchanan does hereby accuse and claim the aboved named Defendant did commit**

**Count 1:** Civil rights- Due Process *42 U.S.C. § 1983, with relief authorized under § 1988*

***Count 2:*** Right To A Fair Trial And Impartial Tribunal *42 U.S.C. § 1983.*

**Count 3 (Felony):** suppressing exculpatory evidence while allowing the prosecution to use the same under color of law *Fourth, Fifth, Sixth, and Fourteenth Amendments e felony of Deprivation of Rights Under Color of Law, contrary to 18 U.S.C. § 242, punishable by up to ten years imprisonment, fines, or both.*

**Count 4 (Felony):** Deprivation Of Rights Under Color of Law *violation of 18 U.S.C. § 241 (Conspiracy Against Rights), a felony punishable by imprisonment up to ten years*

**Count 5 (Felony):** Conspiracy to Defraud the United States *violation of 18 U.S.C. § 371 a felony*

**Count 6 (Felony):** Unlawful Detention / Kidnapping Under Color Of Law *violation of 18 U.S.C. § 1203, punishable by imprisonment for any term of years up to life.*

**Count 7 (Felony):** Concealment Or Suppression Of Records *rights secured under the Constitution, thereby violating 18 U.S.C. § 2071 (Concealment or Removal of Records) and 18 U.S.C. § 1519*

Verified Civil Rights Complaint.

*(Destruction, Alteration, or Falsification of Records in Federal Investigations), each punishable as felonies.*

**COUNT 8:** *Void Summons Issued Without Judicial Signature In Violation Of Fourth And Fourteenth Amendments*

**COUNT 9:** *Unconstitutional Amended Charges Issued Without Personal Judicial Determination*

**COUNT 10:** *Attorney-Signed Pleadings And Memoranda Insufficient Under The Fourth, Fifth, And Fourteenth Amendments*

**COUNT 11:** *Clerk Lisa Peterson Issuing Rubber-Stamped Notices Without Judicial Authority*

**COUNT 12:** *Failure To Transfer Prosecution To Federal Court Upon Assertion Of Non-Citizen National Status, Violation Of Due Process, Equal Protection, And Federal Statutory Framework*

**And commits as**

Comes now Eric Ramon Buchanan, a private individual of the Washington Republic, sui juris and competent to testify to the facts herein, does hereby accuse and claims the above mentioned defendant committed as follows

**I. Non-Criminal Civil Rights Violations *(subject to declaratory and injunctive relief under 42 U.S.C. §§ 1983 & 1988)***

**Count 1: Civil rights- Due Process**

H. LAMONT BERECZ, on or about various dates from June 2023 through May 2025, in Kootenai County, Idaho, did knowingly and unlawfully deprive Eric Ramon Buchanan of due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, by presiding over criminal proceedings despite a direct conflict of interest, denying recusal though he was a named defendant in a federal civil rights suit (2:25-cv-00113-AKB), and issuing pretrial rulings designed to exclude exculpatory evidence critical to the defense, all subjecting himself to civil liability under 42 U.S.C. § 1983, with relief authorized under § 1988.

**Count 2: Right To A Fair Trial And Impartial Tribunal**

Verified Civil Rights Complaint.

H. LAMONT BERECZ, on or about April 25–29, 2025, in Kootenai County Idaho did Willingly and unlawfully deprive Eric Ramon Buchanan of his Sixth Amendment right to a fair trial and impartial tribunal by:

- H. LAMONT BERECZ, on or about April 25-29, 2025, in Kootenai County Idaho Did willingly and intentionally Deny motions to present exculpatory evidence related to the illegality of the traffic stop and GPS tracking;

- H. LAMONT BERECZ, on or about April 25–29, 2025, in Kootenai County Idaho Did willingly and intentionally Barr the defense from calling the prosecutor as a witness to address prosecutorial conflicts, contrary to *Trinsey v. Pagliaro*, and

- H. LAMONT BERECZ, on or about April 25–29, 2025, in Kootenai County Idaho Did willingly and intentionally Preside over the Both dockets for the Eluding and Conspiracy charges while under personal bias and direct civil liability exposure, in violation of the Sixth and Fourteenth Amendments and subject to equitable relief under 42 U.S.C. § 1983.

**II. Criminal Violations Under Color Of Law** *(felonies punishable under federal criminal statutes)*

**Count 3 (Felony):** suppressing exculpatory  evidence while allowing the prosecution to use the same under color of law

**H. LAMONT BERECZ,** on or about April 25–29, 2025, in Kootenai County, Idaho, , did willfully being a judicial officer acting under color of law deprive Eric Ramon Buchanan of rights secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments by issuing orders suppressing exculpatory evidence while allowing the prosecution to use the same underlying facts, thereby committing the felony of Deprivation of Rights Under Color of Law, contrary to 18 U.S.C. § 242, punishable by up to ten years imprisonment, fines, or both.

**III. Conspiracy To Violate Federal Rights** *(criminal felonies under federal law)*

**Count 4 (Felony): Deprivation Of Rights Under Color of Law**

**H. LAMONT BERECZ,** on or about the 29th day of April, 2025, and at other times in Kootenai County Idaho, did willfully and Intentionally conspire and agree with **MOLLY NIVISON DEPUTY**

Verified Civil Rights Complaint.

**PROSECUTING ATTORNEY**, **OFFICER M. SYCHLA K70**, **OFFICER M. EDWARDS K77**, and **OFFICER C. ZIEGLER K96**to commit the crime of deprivation of rights under color of law, in violation of 18 U.S.C. § 241 (Conspiracy Against Rights), a felony punishable by imprisonment up to ten years.**(See Full case History)**

**Count 5 (Felony):** Conspiracy to Defraud the United States

*violation of 18 U.S.C. § 371 a felony*

**H. LAMONT BERECZ**, on or about February 2023 to May 2025 in Kootenai County Idaho, did knowingly and Willingly joined a conspiracy to impair, obstruct, and defeat the lawful functions of the United States courts in ensuring due process and fair criminal trials by deceit, fraudulent legal rulings, and intentional suppression of exculpatory evidence, all in violation of 18 U.S.C. § 371 (Conspiracy to Defraud the United States), a felony.**(See Full Case History)**

**Count 7 (Felony):** Concealment Or Suppression Of Records *rights secured under the Constitution, thereby violating 18 U.S.C. § 2071 (Concealment or Removal of Records) and 18 U.S.C. § 1519 (Destruction, Alteration, or Falsification of Records in Federal Investigations), each punishable as felonies.*

**H. LAMONT BERECZ**, on or about February 2023  to May 2025,  in Kootenai County Idaho did knowingly and intentionally cause the concealment, suppression, or structuring of judicial records, orders, or discovery files**(See Exhibit R)** so as to obstruct justice and deprive Eric Ramon Buchanan of rights secured under the Constitution, thereby violating 18 U.S.C. § 2071 (Concealment or Removal of Records) and 18 U.S.C. § 1519 (Destruction, Alteration, or Falsification of Records in Federal Investigations), each punishable as felonies.

**OVERT ACTS**

**In furtherance of the conspiracies and unlawful acts alleged herein, the following overt acts, among others, were committed in Kootenai County and elsewhere:**

1. **H. LAMONT BERECZ** On or about February 2023 to May 2025 in Kootenai County Idaho Did Knowingly and unlawfully Deny recusal on direct conflict grounds, presiding over a case where he was a named defendant in Mr.  Buchanan's federal civil rights lawsuit.

Page **21** of **30**

Verified Civil Rights Complaint.

2. **H. LAMONT BERECZ** On April 25, 2025,  in Kootenai County Idaho Did willingly and intentionally Issue orders on motions in Limine **(See Exhibit R),** systematically excluding Judicial admissions from the Federal case No. 2:24-cv-00187-BLW-REP, and exculpatory dashcam and bodycam footage as well as while simultaneously allowing the prosecution to present surveillance-derived evidence from the same investigations.

3. **H. LAMONT BERECZ** On April 25, 2025,  in Kootenai County Idaho Did knowingly and willingly allow evidence from a warrantless GPS surveillance to be used in litigation **(See Exhibit R).**

4. *H. LAMONT BERECZ* On April 25, 2025, in Kootenai County IdahoDid willingly and Intentionally Barr the defense from calling Prosecutor **MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY** as a witness to explore conflicts and misconduct directly related to the manufacturing of charges **(See Exhibit R)**. Pursuant (Trinsey v. Pagliaro D.C.Pa. 1964, 229 F. Supp. 647) also see. Frunzar v. Allied Property and Casualty Ins. Co., (Iowa 1996)† 548 N.W.2d 880 *Professional statements of litigants attorney are treated as affidavits, and attorney making statements may be cross-examined regarding substance of statement.*

5. **H. LAMONT BERECZ** on April 29, 2025 in Kootenai County Idaho Did Knowingly and unlawfully Allow the jury to deliberate without instructions requiring corroborating evidence beyond the testimony of a co-conspirator, in violation of federal due process standards **(See Exhibit N).**

6. **H. LAMONT BERECZ** From February 1, 2024 to April 22, 2025, in Kootenai County Idaho Did knowingly and unlawfully allow a conspiracy charge to be prosecuted with no Co Conspirator allocated with a Delivery charge that was already dismissed for lack of evidence

7. **H. LAMONT BERECZ** on April 28th and 29, 2025 in Kootenai County Idaho did Knowingly and intentionally allow an impossible conspiracy charge to be litigated trial despite violations of the plurality rule.

Verified Civil Rights Complaint.

8. **H. LAMONT BERECZ** On April 25, 2025, in Kootenai County Idaho Did Knowingly and intentionally Allow Mr. Buchanan to be Convicted for A Conspiracy charge with no Co Conspirator,

9. **H. LAMONT BERECZ** On April 28 and 29, 2025, in Kootenai County Idaho Did Knowingly and willingly allow MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY to change the jury Instructions to add **"did aid and abed"(See Exhibit N)**

10. **H. LAMONT BERECZ** on April 29th to the present day in Kootenai County Idaho Did Knowingly and willingly Maintain the unlawful conviction

**COUNT 8: Void Summons Issued Without Judicial Signature In Violation Of Fourth And Fourteenth Amendments (See Exhibit U)**

Petitioner alleges that the criminal summons issued in Idaho Case Nos. CR28-24-1747 was mechanically signed solely by a deputy clerk, without the signature or personal hand of a magistrate, in direct violation of:

- Idaho Criminal Rule 4(a):

"Upon the finding of probable cause, the magistrate must issue an arrest warrant or a summons under the magistrate's hand and sign the warrant or summons."

- The Fourth Amendment, which requires all process initiating the restraint of liberty to be issued upon probable cause by a neutral and detached magistrate.

- **Shadwick v. City of Tampa, 407 U.S. 345, 351-353 (1972),** holding that warrants or summonses must issue under the authority of a neutral judicial officer, not a clerk acting ministerially.

As such, the summons was void ab initio, failed to confer personal jurisdiction over Petitioner, and violated the due process guarantees of the Fourteenth Amendment. Any subsequent detention or prosecution arising therefrom is constitutionally invalid.

**COUNT 9:** Unconstitutional Amended Charges Issued Without Personal Judicial Determination

Verified Civil Rights Complaint.

Petitioner further alleges that the State of Idaho materially amended the charges in the above-captioned criminal cases. However, these amended charges were not personally reviewed or hand signed by a neutral magistrate, but were instead approved by means of a mere rubber stamp, violating **(See Exhibit V)**

- **Idaho Criminal Rule 7(c),** requiring that an information be signed by the prosecuting attorney and founded upon valid probable cause.

- **Idaho Criminal Rule 4(a) & (b),** requiring that criminal process issue under the hand of the magistrate upon a sworn showing of probable cause.

- The Fourth Amendment, which demands probable cause "supported by Oath or affirmation" and determined by a neutral magistrate.

- **Gerstein v. Pugh, 420 U.S. 103 (1975)**, mandating a neutral judicial determination of probable cause.

- **Coolidge v. New Hampshire, 403 U.S. 443 (1971)**, condemning magistrates who serve as mere rubber stamps.

The defective approval of these amended charges rendered the amended charging instruments void ab initio, depriving the state court of jurisdiction and violating Petitioner's rights under the Fourth and Fourteenth Amendments.

**COUNT 10:** Attorney-Signed Pleadings And Memoranda Insufficient Under The Fourth, Fifth, And Fourteenth Amendments **(See all State Pleadings)**

Petitioner asserts that numerous motions and pleadings filed in this case, both in the state proceedings and in subsequent federal actions, were unsigned by the actual moving parties or not signed at all on the motion itself, with only the supporting memorandum bearing an attorney's signature. This violates:

- Fed. R. Civ. P. 11(a) & Idaho R.C.P. 11(a)(1):

"Every pleading, written motion, and other paper must be signed... An unsigned paper shall be stricken."

Page **24** of **30**

Verified Civil Rights Complaint.

- Trinsey v. Pagliaro, 229 F.Supp. 647 (E.D. Pa. 1964), which holds that statements of counsel are not evidence and cannot establish material facts.

Such defects deny Petitioner the procedural due process guaranteed by the Fifth and Fourteenth Amendments, and render any orders predicated upon these defective motions constitutionally infirm.

**COUNT 11:** Clerk Lisa Peterson Issuing Rubber-Stamped Notices Without Judicial Authority**(See Exhibit Q)**

Petitioner further alleges that Clerk Lisa Peterson and her deputies issued multiple "notices of hearing" and scheduling orders under mechanical signature or automated process, without any indication of a judicial directive, violating:

- Idaho Criminal Rule 54(a):

"The clerk has authority to sign and enter all judgments and orders when ordered by the court."

- The due process clauses of the Fifth and Fourteenth Amendments, as such notices unlawfully compelled Petitioner to appear without valid judicial process.

These ultra vires acts by the clerk constitute actions under color of state law that deprived Petitioner of constitutional rights, actionable under 42 U.S.C. § 1983,

**COUNT 12:** Failure To Transfer Prosecution To Federal Court Upon Assertion Of Non-Citizen National Status, Violation Of Due Process, Equal Protection, And Federal Statutory Framework

### 1. Eric's national status and formal notice

Plaintiff Eric Ramon Buchanan provided the State of Idaho, its prosecuting officials, and its courts with formal documentation and notice affirming his status as a non-citizen national of one of the Several States(See Exhibit W). Such status is recognized under 8 U.S.C. § 1101(a)(21)–(23), which distinguishes nationals from mere "aliens," while still extending to them full constitutional protections.

By law, a "State Citizen national" means a person who owes permanent allegiance to one of the Several States under the Articles of confederation even if not classified as a statutory citizen and is entitled to the protections of the Constitution in all dealings with state and federal authorities.

Verified Civil Rights Complaint.

## 2. The obligation to recognize and respect national status under federal Law

The United States Supreme Court has long held that nationals are protected under the U.S. Constitution, including under the equal protection and due process guarantees of the Fifth and Fourteenth Amendments.

This extends to ensuring they are not selectively subjected to state court jurisdiction in derogation of their federally protected rights.

Numerous statutory and constitutional frameworks, including Article III, Section 2 of the U.S. Constitution, ensure that federal courts have jurisdiction over cases involving nationals asserting federally protected rights, particularly when raising constitutional challenges to state action.

## 3. The improper retention of state jurisdiction despite clear invocation of federal forum

Upon receiving Eric's formal documentation and explicit invocation of his non-citizen national status, the State of Idaho was constitutionally and statutorily obligated to recognize his standing to have constitutional questions determined by a federal tribunal, especially in light of:

- The longstanding principle that nationals may invoke federal protection directly, as recognized in both immigration and territorial doctrines, guaranteeing federal oversight when constitutional rights are implicated.

Despite this, Idaho state officials and courts failed or refused to honor Eric's status and right to federal jurisdiction, continuing to prosecute him under state court processes that were already infected with constitutional violations.

## 4. Equal protection & due process implications

This refusal to respect Eric's invocation of his national status and to transfer proceedings to a federal forum violates both the Equal Protection Clause and the Due Process Clauses of the Fifth and Fourteenth Amendments, because:

- It denies him equal treatment and procedural rights guaranteed to nationals under U.S. law,

- It subjects him to a state process that he explicitly sought to challenge in federal court based on well-documented constitutional deprivations.

Page **26** of **30**

Verified Civil Rights Complaint.

## Conclusion

Such conduct by Idaho state authorities further supports damages under 42 U.S.C. § 1983, given the deliberate refusal to respect federal statutory and constitutional protections guaranteed to non-citizen nationals asserting their rights in the face of unlawful state action.

**All of which is contrary to the form, force, and effect of the statutes in such cases made and provided and against the peace and dignity of Eric Ramon Buchanan. Said complainant therefore prays for proceedings according to law.**

## VI. PRAYER FOR RELIEF

WHEREFORE, based on the verified counts, sworn factual allegations, overt acts, and continuing violations described herein, Eric Ramon Buchanan, sui juris, respectfully demands that this Court enter judgment in his favor and against Defendant MOLLY NIVISON DEPUTY PROSECUTING ATTORNEY, And Judge H. LAMONT BERECZ, and provide the following relief:

### A. Declaratory Relief

1. Declaring that Defendant Nivison's acts, including manufacturing a conspiracy by orchestrating the last-minute arrest and immunity grant to Allison Kimber, prosecuting an impossible conspiracy under the plurality rule, suppressing exculpatory dashcam and bodycam evidence, and misleading the jury through improper instructions — violated Eric Ramon Buchanan's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments and under 42 U.S.C. §§ 1983, 1985, and 1986.

2. Declaring that Defendant BERECZ's acts, including presiding over criminal proceedings under direct conflict of interest, issuing orders that suppressed exculpatory evidence, refusing recusal, enabling fabricated conspiracy charges, and continuing unconstitutional detention, violated Eric Ramon Buchanan's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and under 42 U.S.C. §§ 1983, 1985, and 1986.

3. Declaring that the conviction obtained through these unconstitutional acts is null and void under the Constitution and laws of the United States, and that Petitioner's continued ongoing

Verified Civil Rights Complaint.

deprivation of liberty under color of law detention is unlawful and amounts to aggravated kidnapping under color of law in violation of 18 U.S.C. §§ 241, 242, and 1203.

## B. Injunctive Relief

1. Enjoining Defendant Nivison from engaging in any further prosecutorial actions or contact involving Petitioner.

2. Directing immediate judicial relief, including vacating any convictions obtained through such constitutional violations and ordering prompt release from unlawful custody.

3. Ordering such other equitable relief as necessary to remedy the continuing harm, including injunctive directives to vacate convictions obtained through constitutional violations.

## C. Compensatory Damages

Awarding compensatory damages under 42 U.S.C. §§ 1983 and 1988, as well as under the inherent powers of this Court and common law of tort for:

1. Compensatory damages in the amount of $3,500,000.00, representing:

   o Past and continuing emotional distress, humiliation, mental anguish, and loss of liberty, calculated at not less than $10,000 per day for each day unlawfully imprisoned since April 29, 2025;

   o Lost wages, loss of business opportunities, and related economic harm arising from being wrongfully convicted and imprisoned.

   Costs of litigation, defense, family support disruptions, and related personal and professional losses.

## D. Punitive Damages

Awarding punitive damages against Defendant Nivison personally, in an amount sufficient to deter prosecutorial officials from engaging in similar abuses of power, under the principles set forth in

Page **28** of **30**

Verified Civil Rights Complaint.

*Smith v. Wade*, 461 U.S. 30 (1983), and consistent with punitive liability under 42 U.S.C. § 1983 for willful, malicious, or reckless deprivation of constitutional rights.

Awarding punitive damages in an amount sufficient to deter similar conduct by judicial officers who, under color of law, willfully violate clearly established constitutional rights, under the principles articulated in *Smith v. Wade*, 461 U.S. 30 (1983), and consistent with federal law on punitive liability under 42 U.S.C. § 1983.

1. Punitive damages in the amount of $13,000,000.00, to punish and deter further egregious misconduct under color of law, given the deliberate nature of the constitutional violations, fabrication of charges, suppression of exculpatory evidence, and unlawful conspiracies.

### E. Attorneys' Fees and Costs

Awarding Petitioner all reasonable attorneys' fees, litigation costs, and other expenses under 42 U.S.C. § 1988, and under the equitable powers of this Court.

### F. Any Other and Further Relief

Granting such other, additional, and further relief as this Court may deem just and proper under the circumstances, including any equitable orders necessary to restore Petitioner to the status quo ante, compensate fully for all losses, and prevent further violations of federally secured rights.

### VII. STATUTORY BASIS FOR RELIEF

This relief is expressly authorized under:

- 42 U.S.C. § 1983 (civil action for deprivation of rights);

- 42 U.S.C. § 1988 (providing for attorneys' fees and equitable remedies);

- 18 U.S.C. §§ 241, 242, 1203, 2071, 1519 (criminal statutes establishing the underlying felonies and conspiracies that caused these injuries);

- and this Court's inherent powers in law and equity under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367 (supplemental jurisdiction), 2201 (declaratory judgments), and 1391 (venue).

Page **29** of **30**

Verified Civil Rights Complaint.

Respectfully submitted,

Eric Buchanan

Petitioner, sui juris

## *NOTORIAL* JURAT

*COUNTY OF KOOTENAI* )

                                    *SS* )

*STATE OF IDAHO*          )

*On this* 5th *day of* ~~June~~ August *, 2025, Eric Buchanan did personally appear before me, identified by (form of identification) and did take and Oath and stated the above statements are  true and correct to the best of his knowledge and belief. Subscribed by me the below identified Notary Public in and for the State of Idaho, on the date first above written.*

*(Name of Notary)*

                                                                           {Seal}

My Commission ends _____ June 17th 2028 _____



Verified Civil Rights Complaint.

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| Eric Ramon Buchanan, | ] | Case No. 2:23-cv-00368 |
| Plaintiff, | ] | |
| v. | ] | ORDER GRANTING MOTION |
| State of Idaho  et al | ] | TO ALTER OR AMEND JUDGMENT |
| Molly Nivison, Prosecutor, and | ] | |
| Judge H. Lamont Berecz | ] | |
| Defendants. | ] | |
| _____ | ] | |

ORDER GRANTING MOTION TO ALTER OR AMEND JUDGMENT

Before the Court is Plaintiff's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e), or in the alternative for relief under Rule 60(b). Having considered the Motion, the supporting record, and applicable law, and good cause appearing:

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED.

Relief Requested

Vacatur of Dismissal in 368

a. Vacate the dismissal order under Rule 59(e) (manifest error / new evidence) or, alternatively, under Rule 60(b) (clerical misjoinder / extraordinary circumstances).

Reinstatement of 368 as Proper Civil Rights Case

a. Re-characterize 368 as a Verified Civil Rights Complaint under §§ 1983, 1985, and 1986 (not a removal petition).
b. Confirm federal jurisdiction under 28 U.S.C. §§ 1331, 1343, 1367.

Page **1** of **3**

ORDER GRANTING MOTION TO ALTER OR AMEND JUDGMENT

Fee Preservation & Severance

   a. Apply the $405 filing fee already paid to the new Civil Rights Complaint against Nivison and Berecz (attached as Exhibit B).
   b. Direct the Clerk to open a separate civil rights docket for Nivison/Berecz, crediting the fee.
   c. Clarify that removal actions under § 1443 do not require a fee, and misjoinder was a clerical error not attributable to Petitioner.

Recognition of Default TRO as Injunction

   a. Recognize that the State's failure to respond to the TRO and stay motions constitutes default under Rule 55(a) and enforcement of an injunction under Rule 65.
   b. Enforce the TRO to bar the State from further proceedings or continued detention inconsistent with federal jurisdiction

Contempt Enforcement

   a. Enter a finding that Respondents are in contempt of court for violating the defaulted TRO by continuing to detain Mr. Buchanan.
   b. Order immediate compliance or show cause why they should not be sanctioned.

Notice of Related Cases

   a. Acknowledge and consolidate or coordinate 368 (Nivison/Berecz), 369 (habeas), and 187 (officers) as related cases, to avoid inconsistent rulings and ensure judicial economy.

Sovereign Immunity Clarification

   a. Confirm that damages are sought against Defendants Nivison and Berecz in their individual capacities, and declaratory/injunctive relief in their official capacities, consistent with Ex parte Young and Hafer v. Melo.
   b. Clarify that Eleventh Amendment immunity does not bar this Complaint.

General Relief

   a. Grant declaratory judgment that the acts of Defendants violated clearly established constitutional rights.
   b. Award compensatory and punitive damages as proven at trial.
   c. Award attorneys' fees and costs under 42 U.S.C. § 1988.
   d. Any further relief deemed just and proper.IT IS SO ORDERED.

Page **2** of 3

Dated: _____                    _____

                                                Hon. Judge

                                                United States District Judge

ORDER GRANTING MOTION TO ALTER OR AMEND JUDGMENT